UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRYSTAL DAWN LIVELY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 3:16-cv-05594 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 6; Consent to Proceed Before a United States Magistrate Judge, Dkt. 8). This matter has been fully briefed (*see* Dkt. 12, 13, 16).

Plaintiff's lab results provide objective medical evidence demonstrating the potential presence of an autoimmune disease, such as systemic lupus erythematosus, "SLE." Plaintiff treating rheumatologist prescribed hydroxychloroquine "for lupus" (AR.

42). Therefore, the ALJ's failure to credit fully the medical opinion of plaintiff's treating physician on the basis that it is not substantiated by objective evidence and that plaintiff was not receiving a specific treatment for lupus is not supported by substantial evidence in the record. Similarly, the ALJ's requirement of objective medical evidence demonstrating the existence of pain is contrary to Ninth Circuit law. In addition, although the ALJ characterized plaintiff's treatment as "conservative," nothing in the record reflects that more aggressive treatment options were appropriate or available. Finally, the ALJ fails to explain how plaintiff's activities of daily living are inconsistent with the opinion from plaintiff's treating rheumatologist that she may need additional sick days due to her lupus.

Therefore, after considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical evidence and that this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, CHRYSTAL DAWN LIVELY, was born in 1970 and was 40 years old on the alleged date of disability onset of September 30, 2011 (*see* AR. 174-76, 178-81). Plaintiff graduated from high school (AR. 480). Plaintiff has some work history as a cook in a nursing home facility, customer service cashier and retail price marking (AR. 28-31). Plaintiff last worked through a Work Force training program when she was diagnosed with lupus (AR. 483).

According to the ALJ, plaintiff has at least the severe impairments of "Systemic lupus erythematosus (SLE) and Sjogren's syndrome (20 CFR 404.1520(c) and 416.920(c))" (AR. 460).

At the time of the last hearing, plaintiff was living in an apartment where her boyfriend would sometimes stay and her 5-year-old daughter would sometimes stay with her on weekends (AR. 480-82).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 55-62, 63-70, 73-84, 85-96). In her Opening Brief, plaintiff provides the following administrative proceedings history:

> Plaintiff Lively filed an application for Title II Disability Insurance Benefits on October 19, 2011 and an application for Title XVI Supplemental Security Income ("SSI") on November 8, 2011, alleging disability beginning September 30, 2011, . . . . Tr. 174-6, 178-83, 195. A hearing occurred on September 17, 2012, before Administrative Law Judge M.J. Adams. Tr. 553-81. On October 18, 2012, ALJ Adams issued a decision finding Plaintiff not disabled. Tr. 515-30. After the Appeals Council declined review on January 24, 2014, Plaintiff appealed to this Court. On September 2, 2014, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings. Tr. 531-6, 537-49. *See also*, 550-52, 544. ALJ Adams convened a hearing and issued a second unfavorable decision on July 14, 2015. Tr. 476-514, 455-75. After the Appeals Council declined review on June 14, 2016, Plaintiff filed a complaint in this Court. Tr. 448-53. Plaintiff's date last insured under Title II is June 30, 2013. Tr. 458.

(Dkt. 12, pp. 1-2).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ properly assess opinions from treating medical providers and an occupational therapist; and (2) Did the ALJ provide "clear and convincing reasons to reject plaintiff's testimony (*see* Dkt. 12, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Did the ALJ properly assess opinions from treating medical providers and an occupational therapist?**

Plaintiff contends that the ALJ erred when failing to credit fully the medical evidence, such as the medical opinion provided by plaintiff's treating physician and rheumatologist, Dr. Andrew Luk, M.D. Defendant contends that there is no harmful legal error in the ALJ's evaluation of the medical evidence.

When an opinion from a treating doctor is contradicted by other medical opinions, the treating doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§

404.1527(a)(2). In addition, a "treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

As noted by defendant, plaintiff "first saw treating physician Dr. Luk in July 2011, with follow-up visits in August 2011, September 2011, in February 2012" (Dkt. 13, pp. 8-9 (citing AR. 348-57, 402-36)). As noted by plaintiff, at the first visit, "Dr. Luk suspected fibromyalgia (FMS) vs. SLE or Sjogren's Syndrome and ordered additional lab tests which showed results associated with [systemic lupus erythematosus, "SLE"] and Sjogren's" (Dkt. 12, p. 9 (citing AR. 353, 423 ("one or more of the antibodies associated with autoimmune rheumatic diseases is positive"))). In August, 2011, as noted by defendant, "Dr. Luk wrote a hand-written note, stating that plaintiff was being treated for probable SLE [systemic lupus erythematosus] and was being started on hydroxychloroquine [and] also wrote that plaintiff had to miss several days of work because of her symptoms, and may need additional sick days off until her disease is better controlled" (Dkt. 13, p. 9 (citing AR. 422)).

The ALJ failed to credit fully the medical opinion of treating physician, Dr. Luk, in part based on the finding that "there is no reference to objective evidence to substantiate [his] assessment, nor was the claimant receiving any specific treatment for Lupus at that time" (AR. 467 (citing AR. 422)). However, these findings by the ALJ are

not based on substantial evidence in the record as a whole, but instead completely contradict the record. In fact, the very page cited by the ALJ purportedly in support of these findings indicates that plaintiff "is being treated for probable systemic lupus erythematosus . . . [and] is being started on hydroxychloroquine [HCQ] for Lupus" (AR. 422). Therefore, plaintiff clearly was receiving a specific treatment for Lupus at the time of Dr. Luk's opinion (*see id*.). In addition, as already noted, the laboratory tests ordered by Dr. Luk demonstrate that "one or more of the antibodies associated with autoimmune rheumatic diseases is positive" (AR. 423). Specifically, plaintiff's antibodies test reveals positive results for "Anti SSA/Ro," and includes the comment that "Antibodies to SSA/Ro . . . . are associated with Sjogrens Syndrome and SLE [systemic lupus erythematosus]" (*id*.). Therefore, there is objective medical evidence that supports Dr. Luk's assessment.

      The ALJ also failed to credit fully the medical opinion from Dr. Luk by finding that his assessment "is inconsistent with the treatment notes showing unremarkable physical exams, treatment limited to conservative measures, and evidence of the claimant engaging in activity showing greater physical functioning ability (*e.g*., doing household chores, childcare, shopping, driving car, *etc*.) as discussed above" (AR. 467). However, the ALJ fails to specify what findings were expected on physical examination to substantiate plaintiff's pain and fatigue. As noted by the Ninth Circuit, a plaintiff "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen v. Chater*, 80 F.2d 1273, 1282 (9th Cir. 1996) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991)). Similarly, as argued by plaintiff, the

"ALJ also failed to comprehend that there is no 'cure' for Lupus and Dr. Luk, as a specialist in rheumatology, prescribed HCQ" (Dkt. 12, p. 11 (citing AR. 348-49)). The ALJ does not specify what further treatment measures would be expected to treat plaintiff's Lupus, and the characterization of plaintiff's prescription for HCQ as "conservative" is not a legitimate reason for the failure to credit fully the opinion from plaintiff's treating rheumatologist. As noted by the Ninth Circuit in an analogous circumstance, a claimant "cannot be discredited for failing to pursue non-conservative treatment options where none exists," noting that the record in that case did "not reflect that more aggressive treatment options [were] appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010)) (unpublished memorandum opinion). Furthermore, it appears that the ALJ was not aware even of plaintiff's prescription for HCQ, as the ALJ, in the previous sentence, erroneously indicates that plaintiff was not "receiving any specific treatment for the lupus at that time" (AR. 467; *see also* AR. 422 (plaintiff "is being started on [HCQ] for Lupus")).

      Finally, the ALJ fails to explain how plaintiff's doing household chores, childcare, shopping, and driving demonstrate "greater physical functioning ability" than opined by Dr. Luk, or demonstrate that plaintiff would not need additional sick days due to her Lupus (*see* AR. 467). As noted by plaintiff, the Ninth Circuit has discussed the issue of a claimant's activities of daily living and pain complaints, finding in *Garrison* that:

> [T]he ALJ erred in finding that these activities, if performed in the manner that [the claimant] described, are inconsistent with the pain-related impairments that [the claimant] described in her testimony. We have repeatedly warned that ALJs must be especially cautious in

>concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen v. Chater*, 80 F.3d , 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted in original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted in original): *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted in original)).

*Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014). Simply describing plaintiff's activities of daily living does not demonstrate an inconsistency with Dr. Luk's opinion that plaintiff would require extra sick days due to her Lupus, especially given plaintiff's allegations of symptoms that wax and wane, resulting in good days and bad days.

Defendant offered another rationale that she believes the ALJ could have offered in support of the failure to credit fully Dr. Luk's opinion. However, defendant acknowledges that "the ALJ did not specifically state this" (*see* Dkt. 13, p. 10). The ALJ not only did not specifically state this, but also the ALJ did not imply this rationale,

therefore, it is not considered herein. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's rationale for failing to credit fully the medical opinion of plaintiff's treating rheumatologist, Dr. Luk, is not based on specific and legitimate rationale supported by substantial evidence in the record as a whole. The Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit has reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). In

*Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, the ALJ failed to credit fully Dr. Luk's opinion that plaintiff had missed several days in one month due to her symptoms of Lupus, and that, as noted by the ALJ, she "would need additional sick days due to the Lupus" (AR. 467; *see also* AR. 422). At her second administrative hearing, the vocational expert testified that "most employers would probably tolerate somewhere between four and six [unexcused, unscheduled absences] in a 12 month period" (AR. 512). Therefore, the Court cannot conclude with confidence that "no reasonable ALJ, when fully crediting the [opinion of Dr. Luk], could have reached a different disability determination." *See Marsh*, 792 F.3d at 1173. Therefore, the ALJ's error is not harmless and this matter must be reversed.

For the reason stated and based on the record as a whole, Court concludes that the ALJ erred when evaluating the medical evidence, requiring reversal of this matter, and that, following remand, the ALJ should reevaluate all of the medical evidence of record.

However, it is not clear that plaintiff is disabled and it is not clear that the ALJ would be required to find plaintiff disabled if the opinion of Dr. Luk is credited in full. Although Dr. Luk's opinion suggests that plaintiff *may* have more than 4-6 unexcused unscheduled absences in a year, such conclusion is not necessarily required based on his opinion (*see* AR. 422). Therefore, this matter shall be reversed and remanded for further

consideration, as opposed to remanded with a direction to award benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)) (remand with a direction to award benefits only is appropriate where "it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited").

      (2)      **Did the ALJ provide "clear and convincing reasons to reject plaintiff's credibility?**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter. However, in order to provide direction to the ALJ following remand of this matter, the Court notes that the ALJ failed to credit fully plaintiff's allegations and testimony with a finding that her activities of daily living showed "greater functional ability than alleged" (AR. 466). However, the ALJ failed to note a single inconsistency between plaintiff's activities of daily living and her testimony or allegations of limitations.

Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (citing *Fair, supra*, 885 F.2d at 603). This error by the ALJ also should be corrected following remand of this matter.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 6th day of January, 2017.

J. Richard Creatura
United States Magistrate Judge